# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KAREN COSTLOW, | : | Case No. 3:21-cv-00043 |
| Plaintiff, | : : | District Judge Thomas M. Rose |
| vs. | : : | Magistrate Judge Sharon L. Ovington |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, *et al.*, | : : : : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Karen Costlow is an inmate presently incarcerated at the Dayton Correctional Institution in Dayton, Ohio. She brings this case against several Defendants concerning her medical treatment at the Dayton Correctional Institution.

This matter is before the Court on Defendants Ohio Department of Rehabilitation and Corrections and the State of Ohio's Motion to Dismiss (Doc. No. 11), Defendants Dayton Correctional Institution, Beverly Clayton and Dr. Rosalind Moore's Motion to Dismiss (Doc. No. 15), Plaintiff's Response (Doc. No. 19), Plaintiff's Motion to Remove and Replace (Doc. No. 20), Defendants Dayton Correctional Institution, Beverly Clayton and Dr. Rosalind Moore's Reply (Doc. No. 21), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. FACTUAL BACKGROUND

Plaintiff Karen Costlow filed a *pro se* complaint challenging the medical care that she has received at the Dayton Correctional Institution. Plaintiff contends that Defendants have been deliberately indifferent to her medical needs and have failed to provide adequate care for several medical conditions, including sleep apnea, COPD, gastric bypass and chronic pain. She also asserts claims of negligence and gross negligence.

Prior to her admittance to the Dayton Correctional Institution, Plaintiff was at the Ohio Reformatory for Women. (Doc. No. 8-1, PageID 66). She informed medical personnel at the Ohio Reformatory for Women that she had sleep apnea and used a CPAP machine.[2] (Doc. No. 1, PageID 2). Her medical provider, Capital Sleep Medicine, faxed her records to the Ohio Reformatory for Women and the records were scanned into her file. (Doc. No. 8-1, PageID 66). Plaintiff was referred for an evaluation by a specialist at the Ohio Reformatory for Women for her sleep apnea, but was transferred to the Dayton Correctional Institution before the evaluation occurred. (Doc. No. 1, PageID 2-3).

On June 24, 2020, Plaintiff had an intake assessment at the Dayton Correctional Institution. (Doc. No. 8, PageID 62). During her intake, Plaintiff relayed her health care information, including her history of sleep apnea and use of a CPAP machine. *Id.* Health Care Administrator, Ms. Meux, informed Plaintiff that she could not be treated for sleep apnea at their facility.[3] *Id.* Plaintiff had an appointment with Ms. Meux and Defendant

---

[2] Prior to filing her Complaint, Plaintiff filed a Motion for Medical Relief (Doc. No. 1) and a Motion for Injunctive Order/Relief (Doc. No. 2). These motions were terminated upon initial review of Plaintiff's Complaint, but are incorporated herein for purposes of necessary factual background.

[3] Plaintiff also refers to Ms. Meux as Ms. Mukes. (Doc. No. 8-1, PageID 62, 67).

2

Clayton in September 2020. *Id.* They reiterated that sleep apnea could not be treated at the Dayton Correctional Institution and asked Plaintiff to sign medical release forms for Capital Sleep Medicine to verify her sleep apnea diagnosis. *Id.* She signed the releases but told them that she had already signed releases for her records. *Id.*

Plaintiff explains that during the visit in September, Ms. Meux and Defendant Clayton were "professional and seemed compassionate toward [her] and [her] medical conditions." (Doc. No. 1, PageID 3). She also states that Defendant Clayton "wrote several prescriptions and orders to address all of [her] health conditions." *Id.* Defendant Clayton wrote for a wedge pillow for sleep apnea, but the order was later denied for reasons unknown. *Id.* Plaintiff was also diagnosed with gout. (Doc. No. 8-1, PageID 67) (Doc. No. 2, PageID 7-8). Plaintiff's notes reflect that during this visit, she was prescribed iron, a gout pill, and recommended a multivitamin. (Doc. No. 8-1, PageID 67).

Additionally, in September, Plaintiff received a knee sleeve, an order for ice to address swelling, an order to not lift or carry more than 10 pounds, assistance with carrying commissary and a bottom bunk. (Doc. No. 2, PageID 7). She also received treatment in October 2020. A nurse provided her with information about gout. (Doc. No. 8-1, PageID 67). Plaintiff had a three-day lay-in where she received treatment for her left knee. *Id.* A nurse also wrote an order for a cane for one year. *Id.* Plaintiff was also informed in October that her doctors had not faxed her records yet, so the medical department was still unable to verify her sleep apnea diagnosis. *Id.* at 62. Defendants recommended that Plaintiff have family members contact her doctor's office to obtain the records. *Id.*

In December 2020 and January 2021, Plaintiff submitted HSR requests related to her knee and sleep apnea. *Id.* She also requested to meet with Ms. Meux and Defendant Clayton. *Id.* Plaintiff filed a formal complaint related to her treatment for sleep apnea. *Id.* In mid-January, Plaintiff visited the infirmary for a "crisis w/ M.H." caused by lack of sleep. *Id.* That same month, Plaintiff also received a response from Ms. Meux as to her informal complaint. *Id.* at 69. Ms. Meux told her to ask her family to contact Capital Sleep Medicine as she had still not received Plaintiff's records. *Id.*

A few days after speaking with Ms. Meux, Plaintiff was called to the infirmary to sign new releases of information for Capital Sleep Medicine so that her records could be requested again. *Id.* at 72. However, while she was there, the individual who was assisting Plaintiff discovered that the records had been scanned into her electronic file on May 16, 2019. *Id.* The individual vowed to notify Ms. Meux about the records and schedule an appointment with Defendant Moore for the following week. *Id.* During that appointment, Defendant Moore informed Plaintiff that she had not reviewed the Capital Sleep Medicine records yet, but that she would review them and get back to her. *Id.* at 70.

Plaintiff subsequently filed a Motion for Medical Relief and Motion for Injunctive Order and Relief (Doc. Nos. 1, 2) on January 19, 2021 and her Complaint on February 22, 2021. (Doc. No. 8). She requested "an order for [her] to be treated for sleep apnea and placed back on a c-pap machine…" (Doc. No. 8, PageID 65). However, in her response, Plaintiff indicates that she has "received an Auto Pap Machine for [her] sleep apnea." (Doc. No. 19, PageID 150). Additionally, she explains that medical personnel administered

4

"one set for shots and steroids for [her] joint-infusion of [her] left knee" and that she has also completed eight weeks of physical therapy at the Dayton Correctional Institution. *Id.*

Notwithstanding these developments, Plaintiff maintains her claims and points to new medical concerns that were not referenced in her complaint. She explains that her "physical health has continued to deteriorate over the last several months." (Doc. No. 19, Page ID 148). She details a series of blood tests ordered by Defendant Moore that returned results "not within normal limits," as well as a drop in her red blood cell count. *Id.* at 148-49. As a result of her blood tests, Plaintiff was transported to Miami Valley Hospital on July 14, 2021 for an iron transfusion. *Id.* at 149. She "was found to be severely anemic and vitamin deficient." *Id.* Defendant Moore later ordered another iron infusion, which Plaintiff received at Franklin Medical Center on July 22, 2021. *Id.* After returning on that same day, Plaintiff was placed on a three-day lay-in due to side effects from the transfusions. *Id.* She received medication and treatment. *Id.*

Plaintiff requests additional relief in her response including (1) vitamins and a modified high protein diet for her gastric bypass surgery, (2) protein/ensure drinks for nutrients, vitamins and protein, (3) to not be treated with deliberate indifference, and (4) to be relocated to a facility that can better handle her medical issues. *Id.* at 150.

### III. DISCUSSION

#### A. Rule 12(b)(6)

Defendants contend that dismissal under Fed. R. Civ. P. 12(b)(6) is warranted because Plaintiff fails to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on such a motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 173 L.E.2d 868 (2009). Legal conclusions "must be supported by factual allegations" that give rise to a plausible inference that the defendant is liable for the misconduct alleged. *Id.* at 679.

Given the liberal pleading standards afforded *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), "it is incumbent on the court to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Friedman v. Campbell*, No. 98-6728, 1999 WL 1045281, at *1 (6th Cir. Nov. 8, 1999). Still, "[t]he leniency granted to *pro se* petitioners … is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Basic pleading standards are still required. *Id.* (citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989)).

**B. Defendants' Motions to Dismiss**

    **a. Claims Under 42 U.S.C. § 1983**

To succeed in proving a cause of action under § 1983, a plaintiff must establish that a person acting under color of state law violated his or her rights under the Constitution or laws of the United States. *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018). It is well-established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks and citations omitted).

When the plaintiff establishes two components—one objective, the other subjective—deliberate indifference exists. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The objective component requires the plaintiff to demonstrate that his or her medical need is sufficiently serious. *Id*. The subjective component requires a showing "that prison officials have a sufficiently culpable state of mind in denying medical care." *Id*. (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)).

7

Indeed, "[s]ometimes [the objective-component] inquiry is a simple one. For example, because a serious medical condition carries with it a serious medical need, when prison officials fail to provide treatment for an inmate's serious medical condition, the inmate has endured an objectively serious deprivation." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citations omitted). "So ...when an inmate had a medical need 'diagnosed by a physician as mandating treatment,' the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment 'so cursory as to amount to no treatment at all[.]'" *Id.* (citations omitted).

Relative here, however, "when an inmate has received on-going treatment for his condition and claims this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart*, 894 F.3d at 737 (citing *Miller v. Calhoun Cty*., 408 F.3d 803, 819 (6th Cir. 2005) (other citation omitted)). To accomplish this, "[t]here must be 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.' The plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id*. at 738 (quoting, in part, *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (other citations omitted).

Plaintiff has failed to establish the objective and subjective components in the instant case. Looking first to the objective component, Plaintiff contends in her complaint that she has not received adequate care for sleep apnea. In her complaint, she was primarily concerned with the fact that she had not received a CPAP machine. However, as she

8

confirms in her response, she has since received a machine. (Doc. No. 9, PageID 150). Importantly, it seems that her concerns related to sleep apnea have entirely resolved.

Nevertheless, even considering the period when she was without the machine, Plaintiff has not set forth verifying medical evidence to establish that she experienced a detrimental effect as a result of the delay. Plaintiff cursorily states that the delay placed her "body at risk to develop high blood pressure, stroke, congestive heart failure and heart attacks." (Doc. No. 1, PageID 4). However, she does not provide any support for this allegation, nor set forth any facts that suggest such risks were realized as a result of the delay. At most, she describes headaches, memory and attention issues and exhaustion due to lack of sleep, which on one occasion prompted a visit to the infirmary. (Doc. No. 1, PageID 4) (Doc. No. 8-1, PageID 5). While her response speaks to other concerns about her health, Plaintiff does not allege that such concerns are in any way related to sleep apnea, nor that they may plausibly derive from a delay in treatment for this condition.

Beyond sleep apnea, Plaintiff also contends that she has not received adequate care for her chronic pain, which is primarily in her left knee. However, as before, Plaintiff has not set forth a claim for relief. Similar to her sleep apnea, Plaintiff's concerns related to her chronic pain seem to have resolved since filing her complaint. As she describes in her response, Plaintiff has "received one set of shots and steroids for [her] joint-infusion of [her] left knee." *Id.* She also has completed eight weeks of physical therapy.

And, even prior to that time, Plaintiff received on-going treatment for this condition. For example, she describes that Defendant Clayton gave her a larger knee sleeve and increased her medication. (Doc. No. 2, PageID 7). She also details that she received an

order for ice to address swelling, an order to not lift or carry more than 10 pounds, assistance with carrying commissary, and continued placement in a bottom bunk. (Doc. No. 2, PageID 7). Additionally, Plaintiff explains that Dr. Clayton believed that her knee pain was likely the result of a "gout flare up" and prescribed medication. (Doc. No. 8-1, PageID 67) (Doc. No. 2, PageID 8). Plaintiff was not satisfied with this finding and instead requested that she "be actually examined (i.e., blood work, x-ray, ultrasound, range of mobility, etc.)." *Id.* However, her "disagreement with the testing and treatment [she] has received . . . does not rise to the level of an Eighth Amendment violation." *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (citing *Estelle*, 429 U.S. at 107).

Plaintiff also asserts in her complaint that she has not received adequate treatment for other medical conditions, such as gastric bypass and COPD. However, she does not set forth any facts related to these conditions, nor describe how treatment has been inadequate.

Plaintiff raises other health concerns for the first time in her response, but she does not attribute these concerns to any of the medical conditions described above. Rather, her newly raised concerns pertain to her red blood cell count and blood tests that have come back "not within normal limits." (Doc. No. 19, PageID 148). She argues that these results, which indicate anemia and a vitamin deficiency, show that she is "being monitored yet not treated." *Id.* However, she describes that she has received treatment specifically related to these issues. Plaintiff explains that she received two iron transfusions from Miami Valley Hospital and the Franklin Medical Center after the deficiencies became known. *Id.* Plaintiff also was treated for side effects that she experienced after the transfusions. This does not show that Defendants failed to treat her, nor that they "provided treatment 'so

10

cursory as to amount to no treatment at all[.]'" *Rhinehart*, 894 F.3d at 737. Accordingly, for these reasons, Plaintiff has not established the objective component.

As for the subjective component, "[a] doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.' This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738 (quoting, in part, *Santiago*, 734 F.3d at 591; citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (other citations omitted).

Plaintiff has not satisfied the subjective component as to Defendant Clayton or Defendant Moore.[4] Turning first to Defendant Clayton, Plaintiff has failed to set forth a plausible claim that Defendant Clayton "consciously expos[ed] [her] to an excessive risk of serious harm." *Rhinehart*, 894 F.3d at 738-39 (quoting *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018)). Plaintiff contends that Defendant Clayton ignored her sleep apnea and deliberately prevented her from receiving proper care. However, she also describes that Defendant Clayton provided her with ongoing treatment for various medical conditions. In fact, she even states that Defendant Clayton was "professional and seemed

---

[4] Plaintiff initially brought claims against Ms. Meux. However, she later filed a Motion to Remove and Replace (Doc. No. 20). She primarily seeks to remove Ms. Meux as a Defendant because Ms. Meux is no longer at the Dayton Correctional Institution. (Doc. No. 20, PageID 157). This request is well-taken. However, the undersigned declines to grant Plaintiff's request to replace Ms. Meux with her successor, Ms. Craft, because in light of the present analysis, consideration of Plaintiff's claims as they may pertain to Ms. Craft would be futile.

11

compassionate towards [her] and [her] medical conditions," and that she "wrote several prescriptions and orders to address all of [her] health conditions." (Doc. No. 1, PageID 3).

Plaintiff also suggests that Defendant Clayton refused to look through her medical file, which contained her relevant medical records that verified her sleep apnea diagnosis and prior use of a CPAP machine. However, these allegations, at most, point to the possibility of negligence rather than supporting a plausible claim that Defendant Clayton was deliberately indifferent to Plaintiff's serious medical needs. Furthermore, even if negligence was plausible—rather than merely possible in this instance—negligence would not be enough to prove deliberate indifference. *See Santiago*, 734 F.3d at 592.

Plaintiff's assertions also fall short as to Defendant Moore. She takes issue with the fact that Defendant Moore had not reviewed her records from Capital Sleep Medicine before her appointment. However, it was only the week prior that these records were discovered in her file. (Doc. No. 8-2, PageID 69-70). Plaintiff also raises concerns about her abnormal blood tests results. Yet, as her own allegations reflect, Defendant Moore rendered prompt treatment. Plaintiff describes that after she saw Defendant Moore on July 14, 2021, she was "immediately" taken to Miami Valley Hospital for an iron transfusion. (Doc. No. 19, PageID 148). Defendant Moore subsequently ordered another iron transfusion. At most, it appears that Plaintiff merely disagrees with Defendant Moore's treatment decisions as she has not provided evidence that Defendant Moore erred or acted negligently in caring for Plaintiff, nor that she acted "with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738 (citation omitted).

In her response, Plaintiff cites to two cases in support of her position, but neither case is instructive here. *See Ashdown v. Buchanan*, No. 2:17-cv-495, 2019 WL 3718315 (S.D. Ohio Aug. 7, 2019) (Deavers, M.J.); *Murray v. Ohio Department of Corrections, et al.*, No. 1:14-cv-168, 2017 WL 203285 (S.D. Ohio Jan. 17, 2017) (Litkovitz, M.J.). The court's decision in *Ashdown* related to whether the plaintiff properly used the grievance process—which was the basis of the pending motion for summary judgment. *Ashdown*, 2019 WL 3718315, at *17. That is not an issue in this case. Likewise, in *Murray*, the court summarily denied the defendants' motion to dismiss as moot because the court granted plaintiff an opportunity to file a second amended complaint. *Murray*, 2017 WL 203285, *4.

Ultimately, to establish a claim of deliberate indifference, Plaintiff must show "that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart*, 894 F.3d at 737 (citing *Farmer*, 511 U.S. at 834-35). She has not done so here. Accordingly, Plaintiff's claims under 42 U.S.C. § 1983 should be dismissed.

### b. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity because Plaintiff has failed to demonstrate a violation of a constitutionally protected right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow*

13

*v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "In resolving a government official's qualified immunity claims, [courts] look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was 'clearly' established at the time of the alleged misconduct." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013).

For the reasons stated above regarding Plaintiff's failure to state a plausible constitutional claim, Plaintiff has not alleged facts sufficient to state a claim for deliberate indifference under the Eighth Amendment. And, although "it is generally inappropriate for a district court to grant a 12(b)(6) motion on the basis of qualified immunity," the circumstances here demonstrate that Plaintiff has failed to allege facts that establish the violation of a constitutional right. *Wesley v. Campbell*, 770 F.3d 421, 433 (6th Cir. 2015). Qualified immunity therefore shields Defendants from Plaintiff's claims.

### c. Negligence and Gross Negligence

Plaintiff also asserts claims of negligence and gross negligence against Defendants. (Doc. No. 8, PageID64). Yet, as here, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3)) (other citations omitted). Given that the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her state law claims. Accordingly, to the extent that Plaintiff intended to raise these claims under state law, such claims should be dismissed without prejudice to refiling in state court.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Ohio Department of Rehabilitation and Corrections and the State of Ohio's Motion to Dismiss (Doc. No. 11) be granted;

2. Defendants' Dayton Correctional Institution, Beverly Clayton and Dr. Rosalind Moore's Motion to Dismiss (Doc. No. 15) be granted;

3. Plaintiff's Motion to Remove and Replace (Doc. No. 20) be granted in part and denied in part, and;

4. This case be terminated on the docket of this Court.

December 1, 2021                  *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).